```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
A.T., an infant by her mother and natural      :
guardian, KAREN T.; W.T., an                    :
infant by his mother and natural guardian       :
KAREN T.; KAREN T. Individually;                :
DOROTHY CONNER, and MICHAEL                     :
TRIGLIANOS,                                     :
                                                :
                        Plaintiffs,             :
                                                :
                -against-                       :        MEMORANDUM AND ORDER
                                                :        08-CV-4242 (DLI) (MDG)
HOME DEPOT U.S.A., INC., THE                    :
LAMSON & SESSIONS COMPANY,                      :
Individually and d/b/a Lamson Home              :
Products and Carlson, and THOMAS &              :
BETTS CORPORATION,                              :
                                                :
                        Defendants.             :
---------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

Plaintiffs Dorothy Conner, Karen Triglianos, individually and on behalf of infants A.T. and W.T., and Michael Triglianos, through derivative claims, (collectively, "Plaintiffs"), brought the instant complaint against defendants Home Depot U.S.A., Inc. ("Home Depot"), The Lamson & Sessions Company ("Lamson") and Thomas & Betts Corporation ("T & B"),[1] for negligence, breach of express and implied warranty, and strict product liability, for damages due to injuries sustained from a fire allegedly caused by the 1225LS Snowflake On/Off Touch-Control Tree Ornament (the "Lamson Device"). Defendants Home Depot and Lamson (collectively, "Defendants") make separate motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs oppose. For the reasons set forth below, defendants' motions are granted.

---

[1] On December 16, 2008, the parties filed a stipulation of discontinuance dated December 4, 2008, as to defendant T & B. (*See* Docket Entry No. 12.)

## BACKGROUND

I.  **The Lamson Device and Fire**

In December 2005, Plaintiffs allegedly purchased the Lamson Device, which was manufactured by Lamson, from a Home Depot store located on Forest Avenue in Staten Island New York. (*See* Lamson's Rule 56.1 Statement of Undisputed Material Facts ("Lamson 56.1") at ¶ 6; Plaintiffs' Rule 56.1 Response to Statements of Material Facts by Lamson Defendants ("Pl. Lamson 56.1") at ¶ 6; Declaration of Marie Ng in Opposition to Defendants' Motions for Summary Judgment ("Ng. Decl.") Ex. E, December 7, 2009 Deposition of Karen Triglianos ("Karen Triglianos Dep.") at 71-72.) When touched, the Lamson Device changes states (*i.e.*, if it is in the "off" position, it switches to the "on" position and vice versa).[2] (Lamson 56.1 at ¶ 3; Pl. Lamson 56.1 at ¶ 3.) Plaintiffs allege that they placed the Lamson Device on the Christmas tree in their residence located at 330 Dongon Hills Avenue in Staten Island, New York, ("Plaintiffs' residence") and plugged the Christmas tree lights into the device. (*See* Home Depot's Rule 56.1 Statement of Undisputed Material Facts ("Home Depot 56.1") at ¶ 5; Plaintiff's Rule 56.1 Response to Statements of Material Facts by Home Depot ("Pl. Home Depot 56.1") at ¶ 5; August 10, 2009 Deposition of Michael Triglianos ("Michael Triglianos Dep.") at 86-87.)

It is undisputed that, on January 3, 2006, Plaintiffs' residence caught fire, resulting in significant property damage and personal injuries to the possessions and individuals present at the location at the time of the fire. (*See* Home Depot 56.1 at ¶ 1; Pl. Home Depot 56.1 at ¶ 1; Lamson 56.1 at ¶ 1; Pl. Lamson 56.1 at ¶ 1.) Plaintiffs Dorothy Conner, Karen Triglianos, A.T.

---

[2] Notably, the instructions that come with the Lamson Device state that, if the tree lights go on by themselves, the consumer should move the device to a new location and plug it into a different wall outlet because "[l]ine noise on some circuits may trigger the converter" and "[i]ntermittent contact [with surrounding objects] may trigger the circuit." (Ng. Decl. Ex. K.)

and W.T. were all in the residence at the time of the fire, but were able to escape, albeit with injuries. (*See* Ng. Decl., Exs. B and J.)

## II. Cause of the Fire

The parties dispute whether the Lamson Device was a substantial factor in causing the fire here. Fire Marshal John Watkins ("FM Watkins") testified that the fire was accidental and was caused by the electrical holiday lighting on the Christmas tree. (Ng. Decl. Ex. A, November 19, 2009 Deposition Transcript of John Watkins ("Watkins Dep.") at 13-14.) FM Watkins did not recall finding anything that looked like the Lamson Device at the fire scene, and he stated that the wiring of the Christmas tree lights could have had some inherent defect. (*Id.* at 29, 41.)

James J. Bernitt, fire and cause origin expert for All State Insurance Company ("All State"), testified that there were three prongs of a plug retained inside the outlet closest to the Christmas tree, where the Lamson Device was allegedly plugged in. (*See* Ng. Decl. Ex. M, August 11, 2009 Deposition of James J. Bernitt ("Bernitt Dep.") at 7-8.) Mr. Bernitt further testified that he was unable to determine what device was plugged into that outlet, but that the Lamson Device only has two prongs and could not have caused the melting, thus, another device must have been plugged into that outlet. (*Id.* at 7-9, 16-17.) Although Mr. Bernitt stated that "[p]robablistically" the Lamson Device caused the fire, he was unable to say within a reasonable degree of certainty that the Lamson Device caused the fire, because "we do not know what was plugged into . . . [the] upper outlet." (*Id.* at 29-30.) Ultimately, Mr. Bernitt admitted that he lacks the evidence necessary to confirm his theory of what happened. (*Id.* at 34-36.)

Ed Cuyar, Fire Inspector for All State, testified that he did not see anything resembling the Lamson Device at the scene of the fire and that the Christmas tree lights were not preserved

3

after the fire. (Ng. Decl. Ex. O, August 11, 2009 Deposition of Ed Cuyar ("Cuyar Dep.") at 6, 26, 58-59.) Mr. Cuyar also testified that he was unable to contradict the fire marshal's opinion that the fire here was caused by holiday lighting, or fix any responsibility for the fire on the Lamson Device. (*Id.* at 32-33.)

     A. *Plaintiffs' Theory Regarding the Cause of the Fire*

Plaintiffs allege that the fire was started by defects in the Lamson Device, which was plugged into an electrical socket in the wall receptacle directly behind the Christmas tree at the time the fire started. (*See* Am. Compl. ¶ 112; Lamson 56.1 at ¶¶ 2, 4, 7-9; Pl. Lamson 56.1 at ¶¶ 2, 4, 7-9.) Specifically, Plaintiffs allege that a defect in the Lamson Device caused it to activate without being touched, thereby allowing electricity to flow to the holiday lighting on the Christmas tree and cause the fire. (Lamson 56.1 at ¶ 2; Pl. Lamson 56.1 at ¶ 2.) In support of their position, Plaintiffs provide the testimony of Martin Kanner, who was retained on their behalf to serve as an expert witness in the instant action, as well as their own testimony.

Mr. Kanner submitted a declaration dated September 20, 2010, containing both his report and supplemental report, in which he concluded that the Lamson Device was "improperly designed and was poorly manufactured for the purpose intended." (*See* Declaration of Martin Kanner ("Kanner Decl.") Ex. A, Report at 14.) Mr. Kanner also concluded that, "[b]ased on a detailed circuit analysis and extensive professional testing of numerous exemplar units, the ignition source [of the fire at issue here] is . . . the Lamson control unit." (Kanner Decl. Ex. A Supplemental Report at 4.)

Plaintiffs, which include the four victims present during the fire, Karen Triglianos, A.T., W.T. and Dorothy Connor, as well as Michael Triglianos, who is bringing derivative claims in the instant action, were deposed in connection with this action. Mrs. Triglianos testified that she

4

believes the Lamson Device caused the fire, because the top half of the tree was on fire and that is where the Lamson Device was located. (Karen Triglianos Dep. at 9-10.) Mrs. Triglianos also testified that she believes a surge protector, which was on at the time of the fire, was plugged into the same receptacle as the Lamson Device and that a Playstation electronic gaming device ("Playstation") was possibly plugged into that surge protector. (*Id.* at 11-13, 63-66.) Mrs. Triglianos admitted that, although she initially plugged the Lamson Device directly into the outlet, she did not know whether it was subsequently plugged into the surge protector. (*Id.* at 56-57.) Mrs. Triglianos had no knowledge of the Christmas tree lights going on by themselves before their fire, but testified that she learned later that her children had seen the lights go on by themselves. (*Id.* at 16-17, 24-25.)

A report filed by Mrs. Triglianos with the U.S. Consumer Product Safety Commission dated January 9, 2006, indicated that, on the evening of the fire, Mrs. Triglianos noticed on three separate occasions that the Christmas tree lights were on, and that she used the Lamson Device to turn them off each time. (Ng. Decl. Ex. J at 3.) Mrs. Triglianos could not say with any reasonable certainty whether a defect in the Lamson Device caused the Christmas tree lights to turn on after she turned them off on the night of the fire, or whether another family member or defects in the surge protector or Christmas tree lights caused the lights to turn on that night after she had turned them off. She also admitted that her son, whom she heard awaken and walking around the house the night of the fire, could have activated the Lamson Device on his own. (Karen Triglianos Dep. at 28-29; Ng. Decl., Ex. J at 3.)

Dorothy Connor testified that she does not know what caused the fire and that she had never seen the Lamson Device on the tree before the fire. (Ng. Decl. Ex. F, December 7, 2009 Deposition of Dorothy Connor ("Connor Dep.") at 9-10.) A.T. testified that, before the fire, she

5

had seen the Christmas tree lights go on or off without anybody touching the Lamson Device, and that her mother had also observed the lights going on or off without anybody touching the Lamson Device. (Ng. Decl. Ex. G, December 8, 2009 Deposition of A.T. ("A.T. Dep.") at 11-15; *but see* Karen Triglianos Dep. at 16-17, 24-25 (testifying that she had not observed the Christmas tree lights go on or off without anybody touching the Lamson Device).) W.T. testified that he did not know what was plugged into the outlet right by the Christmas tree in his home, and he saw the Christmas tree lights on the tree go on or off without somebody touching the Lamson Device once. (Ng. Decl. Ex. H, December 8, 2009 Deposition of W.T. ("W.T. Dep.") at 8, 10-11.)

Michael Triglianos testified that nothing other than the Lamson Device was plugged into the wall outlet behind the tree prior to the fire, and the Lamson Device was plugged directly into the wall, not into an extension cord. (Ng. Decl. Ex. I, August 10, 2009 Deposition of Michael Triglianos ("Michael Triglianos Dep.") at 6-7, 12; *but see* Karen Triglianos Dep. at 11-13, 63-66 (testifying that there was a surge protector plugged into the wall outlet behind the tree and her husband was mistaken when he testified that nothing was plugged into the wall behind the Christmas tree other than the Lamson Device).) Although Mr. Triglianos said he observed the Christmas tree lights on when they should not have been, he did not observe them go on or off without anybody touching the Lamson Device. (Michael Triglianos Dep. at 10-11.) Mr. Triglianos conceded that he did not know whether the Christmas tree lights had a role in causing the fire or whether anybody examined the lights to rule them out as a cause of the fire. (*Id.* at 17.) Mr. Triglianos testified that he or his wife watered the tree about twice a day. (*Id.* at 27.) Mr. Triglianos also testified that the Christmas tree lights and a tree-top angel, which

6

were all on the tree, had electrical components, and the angel was plugged into the end of the Christmas tree lights strand, which was then plugged into the Lamson Device. (*Id.* at 86-87.)

   B. *Defendants' Theory Regarding the Cause of the Fire*

Defendants argue in their motions for summary judgment that Plaintiffs have not, and cannot, establish that the Lamson Device was the proximate cause of the fire.[3] In support of their argument, Defendants provide the testimony of several expert witnesses. Walter A. Dragus, an engineering technical analyst for T & B, submitted a declaration dated August 5, 2010, in which he includes a letter, dated April 11, 2010 with his initial observations and opinions on the instant matter. (Declaration of Walter A. Dragus ("Dragus Decl.") Ex. B.) He observed that "[t]he original necessary fire scene evidence was relocated/moved/impacted or destroyed before a proper scientific analysis and proper investigation could be performed." (Dragus Decl. Ex. B at 1.) Mr. Dragus also contends that, although FM Watkins reported that there was "beading" on the remains of the Christmas tree and that holiday lighting on the tree was the cause of the fire, "the Holiday lighting was not well documented, photographed or retained by anyone . . . [and] [t]here was no attempt to either preserve or analyze properly, by an electrical analyst, any evidence that would have contained valuable and necessary information to validate both the burn paths and physical position of the Christmas Tree lights, in addition to any other artifacts in the area." (*Id.* at 2.) Mr. Dragus further testified that, as a result, he has no opinion as to whether

---

[3] Defendants also argue that Plaintiffs have not established material issues of fact as to whether the Lamson Device was in fact defective. Defendants further contend that the testimony of Plaintiffs' expert witness, Mr. Kanner, is inadmissible and Plaintiffs committed spoliation by improperly discarding evidence after the fire. In addition, Home Depot argues that it cannot be held liable for any damages because it was not on notice of a dangerous condition and, even if Home Depot did have such notice, it did not have a duty to warn Plaintiffs of a condition that they were already aware of from reading product literature and personal observations. As the court grants summary judgment based on Plaintiffs' failure to establish a material issue of fact as to proximate cause, the court need not address these additional arguments by Defendants herein.

7

the cause of the fire here was holiday lighting, (Declaration of Carl J. Schaerf in Support of Motion for Summary Judgment Ex. A, August 19, 2009 Deposition of Walter Dragus ("Dragus Dep.") at 85), but suggests that, as the fire was reportedly caused by the Christmas tree lights, the liability of the manufacturer of the Christmas tree lighting should be explored, (Dragus Decl. Ex. B at 4).

Mr. Dragus argues that the Lamson Device could not have been the only item plugged into the wall outlet at issue, "because the arced blades found in that outlet were not the Lamson Device blades." (Dragus Decl. Ex. B at 4.) Although Karen Triglianos testified that there may have been some type of surge protector or extension apparatus, without any of the necessary evidence having been kept, Mr. Dragus concluded that there is no way to determine whether the Lamson Device caused the fire. (*See id.*) Mr. Dragus also testified that, after testing an exemplar of the Lamson Device, his opinion is that there was no defect in the Lamson Device, although he has no idea whether there was a defect in the particular Lamson Device in Plaintiff's home because he did not have the opportunity to examine it. (Dragus Dep. at 134-35.) He also testified that, from the tests he conducted, the Lamson Device could not cause a fire. (*Id.* at 136.)

Donald J. Perkins, an employee of Fire Cause Analysis who was retained by Lamson to investigate the fire here, (Ng. Decl. Ex. L, September 4, 2009 Deposition of Donald Perkins ("Perkins Dep.") at 6-7), wrote a report in response to the report authored by Martin Kanner regarding the instant litigation, (Declaration of Donald J. Perkins ("Perkins Decl.") Ex. B.) Mr. Perkins personally investigated the Triglianos home shortly after the fire, (Perkins Decl. Ex. B at 1), and found that, "[d]ue to the extent of damage by the fire with the destruction of electrical conductors, cords, appliances, devices, burn patterns and other data, ***the cause is***

*classified as undetermined*," (*id.* at 6 (emphasis in original); *see also* Perkins Dep. at 46-47). Further, Mr. Perkins testified that "there is no physical evidence one way or another as to what happened in this case," (Perkins Dep. at 47), and while the Lamson Device is a potential ignition source, there are many potential ignition sources such as any of the other appliances that were plugged into the outlets in the room where the fire originated, (*id.* at 46-48, 79-82, 95-96, 108, 110, 126-27.)

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

**I.     Legal Standard**

*A. Causation*

Plaintiffs allege negligence, strict product liability and breaches of express and implied warranty by Defendants. "Under New York law, 'whether the action is pleaded in strict products liability, breach of warranty or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury.'" *Donovan v. Centerpulse Spine Tech*

9

*Inc.*, 416 Fed. App'x 104, 106 (2d Cir. 2011) (quoting *Tardella v. RJR Nabisco, Inc.*, 178 A.D.2d 737 (3d Dep't 1991); *see also Fahey v. A.O. Smith Corp.*, 77 A.D.3d 612, 615 (2d Dep't 2010) ("Whether an action is pleaded in strict products liability, breach of warranty, or negligence, the plaintiffs must prove that the alleged defect is a substantial cause of the events which produced the injury.").

       *B. Use of Circumstantial Evidence to Prove Causation*

Here, there is no direct evidence that demonstrates the exact cause of the fire, because the operative evidence either burned in the fire or was disposed of after the fire, thereby preventing the experts from analyzing it. (*See* Cuyar Dep. at 26, 58-59; Dragus Decl. Ex. B at 1-2, 4; Perkins Decl. Ex. B at 6; Perkins Dep. at 46-47.) Accordingly, Plaintiffs must rely on circumstantial evidence to demonstrate that there is at least a material issue of fact as to whether the Lamson Device caused the fire here.

Although Plaintiffs may prove proximate causation through circumstantial evidence and need not "positively exclude every other possible cause of the accident but defendant's negligence," Plaintiffs must still "render those other causes sufficiently remote or technical so that the jury may reach its verdict based on logical inferences to be drawn from the evidence, not upon speculation." *St. Paul Mercury Ins. Co. v. Pepsi-Cola Bottling Co. of New York, Inc.*, 2007 WL 2262889, at *6 (E.D.N.Y. Aug. 3, 2007) (citations and internal quotation marks omitted). " '[W]here the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury.' " *Olsen v. K Mart Corp.*,

2005 WL 2989546, at *6 (E.D.N.Y. Nov. 8, 2005) (citing *Bernstein v. City of New York*, 69 N.Y.2d 1020, 1021 (1987)).

**II.     Analysis**

Here the facts show there are several reasonable and probable causes of the fire, other than the Lamson Device, which Plaintiffs have failed to render "sufficiently remote or technical so that the jury may reach its verdict based on logical inferences to be drawn from the evidence, not upon speculation." *See St. Paul Mercury Ins. Co.*, 2007 WL 2262889 at *6; *see also Mehra v. Bentz*, 529 F. 2d 1137, 1139 (2d Cir. 1975) ("If the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts.").

One such possible cause of the fire is a defect in the Christmas tree lighting itself. Although Plaintiffs' expert, Mr. Kanner, found that the fire at issue here originated at the Christmas tree and the "fire was initiated by the Lamson[ Device's] improper electrical feed to the Christmas tree lighting," (Kanner Decl. Ex. A, Report at 14), he was unable to rule out other causes such as a defect in the lights themselves, and stated that he doesn't know "specifically what triggered this device in this particular fire."  (*See* Ng. Decl. Ex. C, May 17, 2010 Deposition of Martin Kanner ("Kanner Dep.") at 56, 62, 78; *see also id.* at 105-06 ("[U]nless I examine the Christmas tree lighting installation before the fire, I couldn't tell whether it was a source of the fire."); *id.* at 177 ("[T]he holiday lighting in toto [*sic*] was the source of ignition. I can't say that it was this bulb or this piece of wire or what have you").)  Further, FM Watkins testified that the Christmas tree lights could have had some sort of defect.  (Watkins Dep. at 41.)

Another potential cause of the fire is the three-pronged device, remnants of which were found at the scene of the fire. Although those remnants were found in the outlet closest to the tree, the device could not have been the Lamson Device, which had two prongs, (Kanner Dep. at 21-22; Bernitt Dep. at 7-8), and no one could definitively identify the three-pronged device, (*see e.g.* Bernitt Dep. at 8). (*See also* Dragus Decl. Ex. B at 4 (The Lamson Device could not have been the only item plugged into the wall outlet at issue "because the arced blades found in that outlet were not the Lamson Device blades.").) Based on Mrs. Triglianos' testimony, the three-pronged device could have been a surge protector, which she believes was on at the time of the fire and plugged into the outlet closest to the tree. (Karen Triglianos Dep. at 11-13, 63-66.) Although Mrs. Triglianos stated that she initially plugged the Lamson Device directly into the outlet, she did not know whether it was subsequently plugged into the surge protector. (Karen Triglianos Dep. at 55-57.) Notably, Mr. Kanner admitted that, while the plugs could be consistent with a power strip, he did not know whether there was a power strip plugged into the outlet or, if there was a power strip, whether anything, including the Lamson Device, was plugged into that power strip. (Kanner Dep. at 29-32, 81; *see also id.* at 81 ("I don't know anything about the power strip.".)

Plaintiffs argue that any focus on the outlet with three prongs is merely a red herring because there was no damage in the socket and the outlet was ruled out by the fire marshal as the cause of the fire. (*See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.") at 12.) However, even if the fire marshal ruled out the outlet as the cause of the fire, the three prongs remaining in the outlet still indicate the existence of a device other than the Lamson Device that could have caused the fire.

Other potential causes of the fire include any of the electronic items that were potentially plugged into the outlets in the room with the Christmas tree. (*See* Perkins Dep. at 46-48, 79-82, 95-96, 108, 110, 126-27.) Specifically, Mr. Perkins stated that "[p]hotographs taken by Ed Cuyar . . . show four electrical wall outlets with physical evidence supporting appliances[, which] may include lighting, stereo equipment, extension cords, television sets, answering machines, [the Lamson Device], Christmas tree lights, multiple adaptors and house wiring, [a]ll [of which] are potential ignition sources . . . .") One such item in particular, is the Playstation that was possibly plugged into the surge protector, which was on and plugged into the outlet closest to the tree at the time of the fire. (*See* Karen Triglianos Dep. at 11-13, 63-66; *see also* Bernitt Dep. at 29 ("we do not know what was plugged into . . . [the] upper outlet.").) Another potential cause of the fire is the tree-top angel which was on the tree, had electrical components, and was plugged into the end of the Christmas tree lights strand which was then plugged into the Lamson Device. (*See* Michael Triglianos Dep. at 86-87.)

Plaintiffs assert that there is sufficient circumstantial evidence, including the spontaneous triggering of the Lamson Device and the conclusions expressed by Mr. Kanner and FM Watkins, to create a material issue of fact as to whether the Lamson Device was a substantial cause of the fire at issue here. Plaintiffs argue that FM Watkins' findings, which they assert were confirmed by Martin Kanner, prove that the Lamson Device caused the fire because FM Watkins "opined without a doubt that the cause of the fire was the Holiday Lighting (Ex[.] B[]) and that if there was no current, regardless of the condition of the Holiday Lighting, there would have been no fire." (Pl. Opp. at 10.) However, FM Watkins never stated that the Lamson Device caused either the fire or any "current" that initiated the fire, and, in fact, FM Watkins did not even recall finding anything that looked like the Lamson Device at the scene of the fire. (*See* Watkins Dep.

13

at 29.) Plaintiffs have not submitted any evidence other than their own theories and Mr. Kanner's conclusory statements to demonstrate the Lamson Device's involvement, if any, in causing the fire.

In particular, Plaintiffs rely on Mr. Kanner's conclusion that "[b]ased on a detailed circuit analysis and extensive professional testing of numerous exemplar units, the ignition source [of the fire at issue here] is . . . the Lamson control unit." (Kanner Decl. Ex. A, Supplemental Report at 4.) However, as discussed above, Mr. Kanner admitted that "unless [he] examine[d] the Christmas tree lighting installation before the fire, [he] couldn't tell whether it was a source of the fire." (Kanner Dep. at 105-06.) Instead, he merely reasons that "the holiday lighting should not have been energized at the time that this occurred, [and] the holiday lighting would be energized inadvertently and improper[ly] by [the Lamson Device]." (Kanner Dep. at 182; *see also id.* at 106 ("All I know is that the holiday lighting was the cause of the fire, that the – initiated the fire and that was due to the holiday lighting being improperly energized by the control unit.").) This speculative reasoning is not sufficient to show that the Lamson Device was a substantial cause of the fire.

Mr. Kanner also admitted that he did not know whether there was a power strip plugged into the outlet closest to the tree or, if there was a power strip, whether anything, including the Lamson Device, was plugged into that power strip. (Kanner Dep. at 29-32, 81; *see also id.* at 81 ("I don't know anything about the power strip.").) Mr. Kanner also: (i) was unaware if anything else was plugged into any of the other outlets in the room, (*see id.* at 118-19); (ii) did not know what type of Christmas tree Plaintiffs had or whether it was dry; (*id.* at 134-35); and (iii) did not observe or examine the actual Lamson Device allegedly involved in the instant fire or any other materials taken from the area of the fire, (*id.* at 38-39, 46). Thus, while Mr. Kanner stated in

14

both his report and deposition testimony that the Lamson Device caused the fire, he clearly could not rule out other causes of the fire. His conclusory statement that the Lamson Device caused the fire is not enough to create a material issue of fact as to the cause of the fire, because any number of things could have caused the Christmas tree lights to be energized, such as a defect in the surge protector or the Christmas tree lights themselves, and Plaintiffs have failed to render those other potential causes remote or technical. *See St. Paul Mercury Ins. Co.*, 2007 WL 2262889 at *6; *see also Jeffreys v. City of New York*, 426 F. 3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment, . . . nonmoving parties . . . may not rely on conclusory allegations or unsubstantiated speculation") (citations and internal quotation marks omitted). Notably, neither the All State fire inspector, nor the All State fire and cause origin expert, could say within a reasonable degree of certainty that the Lamson Device caused the fire. (*See* Bernitt Dep. at 29-30, 34-36; Cuyar Dep. at 32-33.) Further, Mr. Perkins personally investigated the Triglianos home shortly after the fire, (Perkins Decl. Ex. B at 1), and found that "[d]ue to the extent of damage by the fire with the destruction of electrical conductors, cords, appliances, devices, burn patterns and other data, ***the cause is classified as undetermined***," (Perkins Decl. Ex. B at 6 (emphasis in original); Perkins Dep. at 46-47). (*See also* Perkins Dep. at 47-48 ("there is no physical evidence one way or another as to what happened in this case.").)

Plaintiffs also assert that "the record supports the known propensity of the device to spontaneously trigger (Ex[.] []K[]) and the subject device had been witnessed to spontaneously trigger by both A[.]T. and W[.]T.[,]" and by Karen T. on the morning of the fire. (Pl. Opp. at 11.) Even if the subject device had a propensity to spontaneously trigger, there is insufficient evidence to demonstrate, without use of speculation, that a defect in the Lamson Device at issue here caused it to spontaneously trigger and cause the fire. That Karen Triglianos saw the

15

Christmas tree lights on the night of the fire when she thought she had turned them off, is not enough to show that a defect in the Lamson Device caused the fire, while rendering remote the other possible causes of the fire discussed above.

Thus, other than conclusory statements made by Mr. Kanner, none of the experts could say with a reasonable degree of certainty that the Lamson Device caused the fire, and several other reasonable and probable causes of the fire exist, including the surge protector, Playstation, defects in the Christmas tree lights themselves, or the unknown appliances potentially plugged into the other outlets in the room where the fire originated. Furthermore, due to disposal of the evidence at the scene of the fire, no one can better determine the source of the fire. Accordingly, denying summary judgment would force the trier of fact to engage in speculation in order to determine which theory of the cause of the fire applies.

In sum, Plaintiffs have failed to render the other reasonable and probable causes of the fire "sufficiently remote or technical so that the jury may reach its verdict based on logical inference to be drawn from the evidence, not upon speculation," summary judgment is granted in favor of Defendants.[4]

---

[4] Plaintiffs also cite *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487 (1989), to support their assertion that "any culpability on the part of the Christmas tree lights does not excuse these Defendants. Even if the injury was caused by the negligence of one of two actors, but it cannot be determined which actor caused the injury, both negligent defendants may be held liable." (*See* Pl. Opp. at 11-12.) However, the court in *Hymowitz* explicitly emphasized:

> the DES situation is a singular case, with manufacturers acting in a parallel manner to produce an identical, generically marketed product, which causes injury many years later, and which has evoked a legislative response reviving previously barred actions. Given this unusual scenario, it is more appropriate that the loss be borne by those that produced the drug for use during pregnancy, rather than by those who were injured by the use, even where the precise manufacturer of the drug cannot be identified in a particular action.

73 N.Y.2d at 508. The situation described in *Hymowitz* is not even remotely comparable to the instant action. Here, Plaintiffs do not allege any of the circumstances that existed in the

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are granted and the complaint is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
January 23, 2012

/s/
DORA L. IRIZARRY
United States District Judge

---

*Hymowitz* case but, rather, simply do not have sufficient evidence to demonstrate even a material issue of fact as to whether the Lamson Device caused the fire.